This will be called as previously announced and the times will be as allotted to council. The first case today is number 171377. In re. Application of George W Schlich. Thank you. Thanks. Ms. Sherry. Good morning. Ms. Sherry Schneid on your presentation. I have to say that I was a little bit shocked by the letter that you filed. That was not a 28J letter as I understand it. So if I can take a moment to explain why we filed that letter and the purpose of the letter. That is an attempt to present evidence that should be presented before. To be clear, two things. The reason we sent the letter is because I anticipated being up here before the court today and explaining why this remains a live issue before the EPO. As you know, there's ongoing parallel proceedings before the EPO and that's what we're seeking discovery based on. In the briefs to this quarter, opening and reply brief, we explained that Broad continues to rely on the Kowalski declarations. The latest brief we filed was the reply brief in October. Since that filing in November about two weeks ago, there have been additional filings before the EPO relying on those declarations. I anticipated being up here before the court today, explaining that they continue to rely on those declarations and I thought it would be better for this court to have the filings I was referring to rather than me to be speaking in the abstract. We're not trying to submit new evidence. Well, I'm only expressing my views, but I'm going to tell you right now, at this point, I'm not going to consider anything that was attached to that letter. And that's completely fine and I understand, Your Honor, what was coming from and would be happy to submit it in a different form. But we're not asking the court to consider it. This is an information that was before the district court. It was something that happened two weeks ago before the EPO and it would be open for the district court to consider on remand. And again, the reason we were submitting it was just to keep the court up to date on what's going on in the EPO proceedings and to explain that this continues to be a very important live issue for us and the continued basis for discovery in this case. Thank you for your explanation. You may go ahead with your argument. And so starting from there, it actually feeds well into what I wanted to start by saying, which is we're before the court for one reason. We're before the court because BRU has submitted these Kowalski declarations to the EPO and has relied on those declarations and it continues to rely on those declarations today. That's why we sought discovery under 1782 into the facts underlying those declarations. And in addition... Maybe you want to explain what is the proposed use, and I emphasize use, of the discovery that will be had before the European agency. The proposed use is to get discovery into the facts underlying the declarations so we can test the foundation for the declaration. And let me be clear, the Kowalski declaration is not a legal declaration. It's a fact declaration. If you look at the declaration itself, which is in the joint appendix at JA-244, paragraphs 15 to 18, particularly the 18, talk about the facts of this inventorship study. And so they've submitted this declaration to the EPO and they rely on it to prove their priority case before the EPO. It's a little bit perverse, frankly, to be arguing about the relevance or the use, frankly, of discovery with respect to a document that they continue to rely on before the EPO. One of two things has to be true. Either the Kowalski declaration itself is irrelevant, in which case they should withdraw it from consideration, or the discovery that we're seeking into the facts underlying that declaration are relevant. And to the for-use point that Your Honor makes, before the district court, it was undisputed that this was for use in the foreign proceedings. It's not something that respondents argued below. If I understand the record correctly, it's your position in the European proceedings that the declaration is irrelevant. So our primary position in the European proceedings is that European law should apply, and if we're correct about that, then you're right, that the declaration is irrelevant. And the district court, more or less in practical terms, agreed with you? I don't know if that's right. What the district court said was that it agreed with us on that half of the equation, but then the district court said, even under United States law, the declaration would be irrelevant, and it went on to explain why it thought that was so. As I read your brief, I know we're looking for a legal error here, not just that the district court might have made a judgment somewhere along the spectrum differently than you think otherwise. As I read your brief, the only legal issue you came to in the brief is that you claim there was a misallocation of the burden of proof. There are two things baked into that, the misallocation of the burden of proof and the actual legal standard that applies under the second intel factor. On the first, on the burden of proof, I didn't see where you argued below that there was any problem with the burden. I do agree with you that there's some language in the district court opinion that could be read as suggesting a shifting of the burden, although it could be read otherwise. It's a little ambiguous. And then, as I understand it, you filed a motion for reconsideration, and in that motion for reconsideration, as I read it, you didn't argue that there was any problem with the burden of proof, and yet you've now appealed to us, asking us to reverse on those grounds. And, of course, we generally don't do that. If I could make four points with respect to that issue. The first one is this court's case law, the fidelity case that we said in our brief, talks about waiver being based on whether something was pressed or passed upon below. And as Your Honor acknowledged, the district court did pass on this issue. I think you said there's some ambiguity in that respect, but I would point the court to page 13 of the addendum, where the court says that it was denying relief because we, Schlick, failed to satisfy our burden to show receptivity. And I'd also point to pages 11 and the carryover to 12. But if you thought that was a burden, particularly where no one had provided the court with any briefing directed to us at that point, why didn't you mention it in your motion for reconsideration? It sounds like now you're saying you were kind of playing hiding in the reeds, not telling the court about it, and then raising it for us. Two things. One, as a legal matter, we're not required to raise something in the motion for reconsideration to preserve it for appeal, but we did drop a footnote, footnote one, in the motion for reconsideration where we explained we're only taking reconsideration with respect to this assignment issue, but we do think that the district court committed errors, including the legal test is the language we used, that the district court applied. So you're telling us you made a conscious decision not to alert the district court to the fact that you thought that its opinion could be read as applying the burden to you? No, we made a conscious decision to focus the reconsideration effort on this one issue that the district court had not addressed at all. The burden, on the other hand, is something that the district court did address and was all adversely to us. We think wrongly. When you got the district court opinion, were you of the view that it misallocated the burden? We were of the view that it misallocated the burden. And so when you filed the motion for reconsideration, you must have made a decision not to raise that with the district court. We made a decision to raise the issue before the district court that the district court hadn't actually decided. If it decided the burden issue, and it was something that we did and were planning on appealing. But the other point I would make is that we did raise the burden issue at JA 791. We said that it wasn't our burden. In the reply brief at page 3, we said that Broad failed to satisfy their burden under the discretionary factors. And Broad made a repeated argument before the district court that not only was it our burden, what they argued was that the court should follow the district court's decision in Babcock. This is another district in Massachusetts case. As a practical matter, let me address just the pragmatic aspects of where we are now. You filed no motion to expedite any of the proceedings that are going on here. So if we take this argument in due course, we'll consider it. We're usually pretty fast, but suppose we get a decision out in a month or so. And suppose we rule your way and we say there's no waiver of the burden issue. There was a mistake on the burden issue. So we remand it to the district court. By the time the district court, in even acting with some reasonable dispatch, gets to it to decide whether you get discovery, as I understand the schedule in Europe, it's going to be done. It won't be done. So let me explain what the schedule is and why it would still remain an issue several months from now, in fact, frankly, longer than that. In this case, the hearing is scheduled for January, but after that there's an appeals process and you can raise new evidence on appeal. Respondents don't dispute that fact. And if you look at a number of these 1782 cases, the way they progress, in a lot of the appeals, Euromipa, Bayer, even in the Asimetica case here, they were all on appeal at the time. That would suggest then the district court was, the district court left open the possibility for you to come back if you got contrary signals from the European tribunal as to whether it would deem the issue relevant. So if you're saying this isn't going to end with the next pronouncement that will come out of that tribunal, and if that tribunal says, like the prior one, the preliminary one, says you're right, then the issue really would seem to be heading towards mootness. But if it says, no, you're wrong, they're right, then you can go back to the district court at that point and re-ask for the discovery. So two points on that. One is there's a timing problem. Yes, if they rule in our favor, that would be great for a variety of other reasons, but they're still going to appeal it. They're still going to presumably raise the same issues on appeal, and so we need the evidence in order to contest their position. I mean, they're the ones that put this at issue and raised the question. The second point I would make is a very practical one with respect to the fact that the district court did leave open the possibility of us coming back to the district court, and the reason we sent the 2018 letter, there have been these more recent filings that would give us grounds to go back to the district court and bring in this petition. We'd very much like to go back there and have the correct legal standard applied in the first instance, which is why we are before this court as opposed to just running back to the district court in the first place. And, again, applied the wrong burden and didn't require authoritative proof as the Second and Third Circuits have. But in addition to that, if we're talking about relevance, which is what respondents have focused on, it really applied the wrong relevance analysis as well. Courts have cautioned. Absolutely. You mentioned the issue of relevance. I understand that the district court seemed to focus on the receptiveness portion of the discretionary analysis. But I think what the district court was saying was that the discovery that you are seeking is not relevant to the European proceedings. Would you agree that relevance is always an issue that the party seeking discovery has to address, that it is in effect a threshold issue always in any kind of discovery regime, and that the party seeking the discovery has to establish, in other words, has the burden to establish that relevance? Isn't that the case? I would agree that in the United States under Rule 26 that it is the burden when it's contested to come forward with prima facie evidence. But this court and other courts have said that this is a very low threshold. And so the courts that have looked to relevance correctly, in our view, have been guided by Rule 26's relevance requirement, which is both a low threshold and is applied to 1782. I think it's important to remember that courts have said not to engage in speculative forays into foreign law, not to require a battle by affidavits, not to predict what a foreign court is going to do. And so to the extent the relevance inquiry would require a court to figure out what the meets and bounds of the claims and defenses are in a foreign court, that would contravene the twin aims of 1782. And so in this context we think that that relevance is even more minimal than it would be even in a normal U.S. discovery context. But whatever the relevance standard is, the mere fact that they are submitting and relying on a declaration, or seeking its discovery into the facts underlying that declaration, in any U.S. court that would be the most basic form of discovery would readily satisfy any relevance requirement. You are, of course, familiar with the decision of the Southern District of New York ruling. Of course. Are we dealing with the same issues there? It is the same issues there. And if I can say two things about the Southern District of New York case, number one, it was resolved on the 4U statutory question, which was undisputed here and was waived by my colleagues by not raising it below. But secondly, we think the Southern District of New York got it wrong as well. And it committed, it had a fundamental misunderstanding of the issues before the EPO. It thought that the only issue before the EPO was a choice of law question. And again, the Kowalski Declaration is not a legal declaration. They have submitted a number of legal declarations to the EPO. The Kowalski Declaration is not one of them. If you look at Bode's response at paragraph 256, this is in the JA at 157, it relies on the facts in the Kowalski Declaration. If you look at paragraphs 15 to 18 of that declaration, those are recounting facts into the inventorship study. It is those facts that the legal experts are relying on before the EPO. And so the Southern District of New York was wrong in saying that the only issue before the EPO was a choice of law. And the fact that two district courts have understandably misunderstood what the issues are before the EPO, it's complicated. My colleague, my respondents out there on the other side have said it's complicated. If you look at JA 815, they told the district court in the hearing this is a really complicated issue and it would be, quote, inappropriate for you, district court judge, to decide this issue. We agree, and that's why we think the district court erred here. Thank you. Thank you. Mr. Nimrod, good morning. Good morning, Your Honors. May it please the court. I'd like to start with the burden issue as to whether it was raised below. There's no mention in the petitioner's briefing below that the burden approved, the burden on the receptivity problem should be placed on the respondents. They say that they raised it at the argument before the court. In fact, at JA 795, this is what they said to the district court. They said, quote, there's more developed law, Your Honor, in some of the other circuits on the issue of 1782, but several of the other courts, including the Second Circuit and the Third Circuit, presume that the foreign tribunal will accept the evidence unless the respondents prove otherwise. In other words, the burden is on the other side to prove that the court won't be receptive. They said that was the law in the Second and Third Circuit. Going on, quote, again, the First Circuit hasn't weighed in, so we'll take that on an even burden. We won't even assign that burden for purposes of this. Close quote. They never argued in their briefs or at the hearing that the burden should be placed on the respondents to show a lack of receptivity and that that is the alleged legal error here that they never presented to the district court. Earlier in the transcript, counsel cites page 791 to 792, and all they say there, once again, on the overall intel factors, is that the Second and Third Circuit place a burden on respondents, but here the First Circuit hasn't weighed in, so we'll take it as a neutral burden. They say the burden's not on them, but it's a neutral burden. They did not argue below at any point that the burden should be placed on the respondents, which is the essence of their appeal here. So they did present the issue to the district court, and it's completely inappropriate, then, to say that the district court erred by not placing the burden on the respondents. And I would submit that at the addendum page 12 in the district court's opinion, where he states that Schlich has not shown that there's any relevance here, he was not imposing a burden. He was taking what they said. It's a neutral burden that he goes on from J, addendum page 9 to page 12, explaining how the evidence shows that this information that was sought, which is out of correctness of inventorship, was simply not relevant to a case. So let me ask you, on its face, there's something odd about the proposition that you would go to the trouble to have Mr. Kowalski prepare this declaration in support of your claims before the European Tribunal, and then when there's opposition raised in an attempt to challenge some aspects of that declaration, that you would say that the effort to secure the information underlying that declaration is irrelevant, when you yourself, arguably, had made that declaration very relevant by submitting it. So I don't understand, given that you introduced the declaration, why you can now say that an attempt to challenge that through this discovery is irrelevant. I would like to address it then. The issue that is presented here is whether they are entitled to get discovery on the correctness of the determination made by Mr. Kowalski. What we submitted to the European Patent Office were declarations of Mr. Kowalski explaining the process he followed under U.S. law, and then two expert declarations from U.S. experts explaining how the process works in the United States for naming inventors. So Mr. Kowalski set the stage as to what he did, and then the experts explained what that meant under U.S. law to the EPO. So his declaration and the expert declarations explain that in the U.S., a prosecuting attorney conducts an investigation and then names applicants and inventors. But suppose they want to challenge, going back to Judge Lopez's question, suppose they want to challenge the description of what he did. Well, Your Honor, and the declarations get into that as well. That is, the process that he actually followed does not matter. All that matters is that he made it. Then why is it in the declaration? Excuse me? Why is it in the declaration? It's in the declaration to say that I'm the person who determined who the inventors were here. And under U.S. law, the USPTO accepts that determination, and it's later shown to be wrong in some way. The patent discovers someone else contributed. Then under U.S. law, you can correct inventorship under other provisions under the statute without any impact on priority, which is what Mr. Kowalski explained the fact of what he did, that I made the determination, and then the U.S. experts said that determination is something that is accepted by the U.S. Patent Office irrespective of correctness. And then if it needs to be corrected later for some reason, because in order to get the benefit of that provisional application date, you had to establish some relationship between the names that appeared on that original more general application and the names of the inventors that are now identified in the applications before the European Tribunal. I gather the Kowalski declaration is an attempt to establish the relationship between those names in the general application and the names on these more specific applications. Is that correct? It's an attempt to explain that he is the one who determined to put the names on the PCT applications. That's right, Your Honor. But it doesn't matter whether or not his determination was correct. So they're trying, I gather, to defeat your, I don't want to use the title, but I guess your right to rely on that earlier provisional application date, your claim to that earlier date is based on the information in this declaration. Since they're trying to defeat your right to rely on that earlier date, why shouldn't they be able to challenge the information in the Kowalski declaration? Because, Your Honor, what they're seeking to do is determine whether or not his determination for the PCT, actually, that's what they're focusing on, was made correctly. And that PCT was filed under U.S. law. So it doesn't matter whether or not he got it right under U.S. law because the correctness of the naming is not relevant under U.S. law. And that's what the district court went through this on pages 10 and 11 where it stated, to understand whether Broad has put the substantive correctness of Kowalski's inventorship determination at issue, it is important to understand exactly what Broad is arguing and why. And then the district court goes on in page 10 and says, if the EPO accepts Broad's choice of argument, it will not need to determine whether Kowalski's inventorship study is substantively correct in order to resolve the narrow question of whether the PCT application can claim priority to the filing date of the provisional application. That is because under U.S. law, whether the correct inventors are named is irrelevant for purposes of deciding whether the application can claim priority to the provisional filing date. More precisely, the PTO presumed the name inventors are correct in order to establish the right to claim priority to a filing date of an application. So you say that because the EPO will presume the correctness of the information in that declaration, there is no basis for your opponents to try to challenge that. There's not a potential factual dispute that they will have to resolve. Is that what you're saying? There would be no dispute for them to resolve, and they actually don't even have the jurisdiction to resolve the dispute they want to resolve. But what we're relying on it for is not to say that he got it right or wrong in terms of correctness of inventorship. We're relying on his declaration to say, I did my analysis, and I named them. And that's it. It doesn't matter whether he was right or wrong in that. You're entitled to then file your application to the U.S. based on that. The U.S. Patent Office accepts that, and that's all that matters. We are relying on his declaration simply to say, I did my determination. I filed the application based on that, and we are not making an argument about substantive correctness there. And it doesn't matter in the U.S. So really, we're telling the EPO that under U.S. law, Kowalski made a determination, and then U.S. experts are saying that it doesn't matter whether it's correct or not. If they will presume the correctness of the identification of the inventors, why would they simply rely on the information set forth in your application? Why did you feel the need to supplement the information on the face of the application with this declaration? You must have felt there was some deficiency in your application that you were trying to address. Not at all, Your Honor. What it was is that we had explained to the EPO, since they're not familiar with the process, how applicants and inventors are named on U.S. applications. And the primary source of that was the two expert declarations. And they explained that the typical process is for a prosecuting attorney to do an investigation and then name accordingly. And whether or not he's right or wrong doesn't matter. So we submitted the Kowalski declaration simply to say, I'm the person who made the determination, I followed my procedure, and I named them. And that's all. So it's not a matter of coming in and saying we think there was a deficiency here. What it was was the EPO is just not an entity that deals with U.S. prosecution practices. So we put in these expert declarations and Kowalski just said, I did the thing that these experts are talking about here, the U.S. experts. I made my analysis, I named the inventors, and whether or not he was correct, as they said, doesn't matter. So it was really a matter of just trying to explain to a tribunal that's not familiar with the process how it works in the U.S. and that somebody did that. And that's all. And I see I've run out of time. Are there any questions that you'd like me to answer? You have three seconds. Thank you. Thank you. If I can start, Judge LaPaz, I think. I'm sorry. I don't think we've served any time for rebuttal. Well, I thought I had started by asking for two minutes, and I neglected to do that. I apologize. I had intended to and started off answering your Honor's question about the 20 HA. I'll grant it anyway. Thank you. I'll be very brief. I just wanted to make two points. Judge LaPaz, in response to the questions, you were just asking, that's exactly the problem. Number one, we are not only seeking discovery with respect to correctness. If you look at the subpoenas we submitted, they are specific to the actual paragraphs in the declaration that Kowalski submitted. It's not just about correctness of indentureship to the extent it's processed, to the extent it's anything else. We're just trying to test what Kowalski is attesting to before the EPO. But they're now saying, and it's been shifting positions. You can look at Brode's response in the JA with respect to them actually relying on the correctness for what Kowalski said. But it's been shifting positions. And if they're not relying on it for correctness, and they're now not even relying on it for process, and if all that matters supposedly before the EPO is what's actually on the PCT application, the applicants listed there, then why is the declaration still in the record? They wouldn't need the declaration if that's all they were relying on it for. The final point I would make, and it's really the ask to this court, we'd ask the court to reverse the district court, to remand, to clarify that under the second intel factor it is the respondent's burden to show that the foreign tribunal would not be receptive, to do so with authoritative proof, and to also clarify that in engaging in a relevance analysis that the court should be guided by Rule 26 and that it should not require an in-depth inquiry into foreign law into the very complicated, admittedly complicated EPO proceedings. Thank you. Mr. Nimrod, have you got additional time? You're right. If I could just have a few briefs. On the point that was raised about this inquiry into foreign law, this is a situation where the district court asked for supplemental briefing after the hearing where counsel said that there was some confusion about what the law was. He asked each party to come in with a briefing as to whether or not the EPO had jurisdiction to resolve this issue of substantive correctness. We came in with the Concalde Declaration. It's completely unrebutted. It's not a battle of the experts. Only one side put an evidence on it, despite the court's request. So this is a simple matter where the other side is seeking discovery of irrelevant information. And no matter what prong or factor you put that under, it's simply not an abuse of discretion to deny discovery into irrelevant information based on an issue that the district court asked for briefing on, and they didn't really even address. Thank you, Your Honor. Thank you.